UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH B.,<br>   Plaintiff,<br> v.<br>KILOLO KIJAKAZI,<br>   Defendant. | Case No. 21-cv-02368-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 20, 27 |

Plaintiff seeks Social Security benefits for a combination of physical and mental impairments, including severe pain in her lumbar, thoracic and cervical spine, and right shoulder, as well as depression. (Administrative Record ("AR") 72, 108, 206.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying her benefits claim. Before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 20, 27.) As explained below, the Court GRANTS Plaintiff's motion, DENIES Defendant's motion, and REMANDS for further proceedings because there are outstanding issues to be resolved before a disability determination can be made.

**BACKGROUND**

**I. Procedural History**

Plaintiff applied for disability and disability insurance benefits under Title II of the Social Security Act in October 2018. (AR 206-211.) Plaintiff alleged a disability onset date of November 8, 2017 due traumatic incident during a work training which resulted in severe pain in her lumbar, thoracic and cervical spine, and right shoulder, as well as emotional distress including depression. (Administrative Record ("AR") 72, 108, 206, 278.) Her applications were denied initially and upon reconsideration. (AR 75-105.) An Administrative Law Judge (ALJ) held a hearing on September 9,

1    2020. (AR 32-74.) On September 30, 2020, the ALJ issued a decision denying Plaintiff's application.
2    (AR 15-26.)
3          At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity
4    since her alleged onset date of November 8, 2017. (AR 17.) At step two, the ALJ concluded that
5    Plaintiff had the following severe impairments: injuries of the cervical, thoracic and lumbar spine. (AR
6    17.) At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the listed
7    impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings"). (AR 20.) The ALJ found that
8    Plaintiff had the residual functional capacity (RFC) to perform light work with the following
9    additional limitations: lift/carry 20 pounds occasionally and 10 pounds frequently; sit/stand/walk for
10   six hours in an eight-hour day; operate hand controls with her right hand occasionally; occasionally
11   reach overhead with the right hand; climb ramps and stairs frequently; climb ladders, ropes or
12   scaffolds occasionally; can work around unprotected heights and moving mechanical parts frequently;
13   could need to change positions between sitting and standing at will, which is not necessarily off-task.
14   (AR 20.) At steps four and five, the ALJ found that Plaintiff could not perform her past relevant work
15   but that that there were other unskilled representative occupations that Plaintiff could perform such as
16   cashier and storage facility rental clerk. (AR 24-25.) As such, the ALJ concluded that Plaintiff was not
17   disabled. (AR 26.)
18         The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1, 7.)
19   Plaintiff then sought review in this court. (Dkt. No. 1.) In accordance with Civil Local Rule
20   16-5, the parties filed cross-motions for summary judgment. (Dkt. Nos. 20, 27.)

21   **II. Issues for Review**
22       1. Whether the ALJ erred in determining Plaintiff's severe impairments?
23       2. Whether the ALJ erred in rejecting Plaintiff's subjective symptom testimony?
24       3. Whether the ALJ erred in evaluating the medical evidence?
25       4. Whether to remand for an award of benefits or further proceedings?

26                                       **LEGAL STANDARD**
27         A claimant is considered "disabled" under the Act if she meets two requirements. *See* 42
28   U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must

demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, she can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds; *see* 20 C.F.R. § 404.1520(a).

## DISCUSSION

### I. The ALJ's Determination that Plaintiff Had No Severe Mental Impairments

Plaintiff first challenges the ALJ's step two determination that she did not suffer a severe mental impairment. An impairment is considered severe if it "significantly limits the claimant's physical or mental ability to do basic work activities." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th. Cir. 2020) (internal quotations and citations omitted).

The plaintiff has the burden to demonstrate the existence of a medically determinable impairment through medical evidence. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also* 20 C.F.R. § 404.1508 (providing that claimant must establish existence of medically determinable impairment from "medically acceptable clinical and laboratory diagnostic techniques"). The Ninth Circuit has recognized, however, that the step-two inquiry is a "de minimis screening device used to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th. Cir. 2001) (internal quotation marks and citation omitted). Indeed, the ALJ can find that an impairment or combination of impairments is non-severe "only if the evidence establishes a slight abnormality than has no more than

3

a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290. (internal quotation marks and citations omitted.) On review, this Court's duty is to determine "whether the ALJ had substantial evidence to find that the medical evidence clearly established that" Plaintiff did not have a severe mental impairment. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ found that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination" were non-severe. (AR 18.) Plaintiff challenges this finding, and in particular, the ALJ's consideration of the medical opinion evidence regarding her depression and anxiety. Plaintiff insists that the ALJ erred in disregarding or assigning only limited persuasive value to medical opinions suggesting that Plaintiff's mental impairments limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1522 ("[a]n impairment…is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Plaintiff maintains that because the medical opinions of examining psychologists Dr. Carol W. Fetterman and Dr. Terrance Riley, and treating psychotherapist Dr. Carol Fabric, establish that she is limited in her ability to do basic work activities—like complete a normal workday without interruptions—the ALJ's determination that her mental impairments were not severe is not supported by substantial evidence. The Court agrees.

The Ninth Circuit has embraced the Commissioner's new regulatory framework for evaluating medical opinions for applications filed on or after March 27, 2017. *See Woods v. Kijakazi*, 32 F.4th 785, 789-792 (9th Cir. 2022); *see also* 20 C.F.R. §§ 404.1520c, 416.920c (2017). The new framework eliminates a hierarchy of or deference to medical opinions, and instead uses factors to determine the persuasiveness of a medical opinion. *See Woods*, 32 F.4th at 789-792. The factors are: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *P.H. v. Saul*, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (cleaned up).

The most important factors are supportability and consistency. *See Woods*, 32 F.4th at 791. "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id*. at 791-92 (cleaned up). "Consistency means

4

the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (cleaned up). The "relationship with the claimant" factor encompasses "the purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed, . . . and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id*. The ALJ must explain how he considered supportability and consistency, may explain how he considered the relationship factors, and is not required to explain the other factors. *See id*.; *see also* 20 C.F.R. § 404.1520c(b)(2).

Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion"; rather, the ALJ's reasons must "simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

> Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions . . . and explain how it considered the supportability and consistency factors in reaching these findings.

*Id*. at 792 (cleaned up).

Here, the ALJ assigned little persuasive value to the opinion of examining psychologist Dr. Carol W. Fetterman, no persuasive value to the opinion of Dr. Terrance Riley, and failed to discuss the opinion of Plaintiff's treating psychotherapist Dr. Carol Fabric.

**A. Dr. Fetterman's Opinion**

The ALJ stated that he was "somewhat persuaded" by Dr. Fetterman's opinion. (AR 19.) The ALJ explained that Dr. Fetterman's opinion was "supported with an examination of the claimant, and is generally consistent with the State agency consultants' findings and the evidence cited in the preceding paragraph. However, it does not specify the claimant's maximum functional capability." (AR 19.) This is the sum total of the ALJ's consideration of Dr. Fetterman's opinion. The ALJ erred as a threshold matter in failing to specify which portion of Dr. Fetterman's opinion the ALJ found partially persuasive. *Woods*, 32 F.4th at 792.

In assessing the severity of a claimant's impairment, "an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of

symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). The ALJ erred here in failing to consider the portion of Dr. Fetterman's opinion finding that Plaintiff had a "fair ability" to complete a normal workday or workweek without interruptions from a psychiatric condition and that her mental health symptoms might impact her ability to handle work related stress. (AR 696.) A "fair ability" constitutes a "moderate" limitation under the regulations. *See* 20 C.F.R. Part 404 Subpart P, Appendix 1, §§ 12.00F(2) (defining a "moderate limitation" as a "fair" ability to function "independently, appropriately, effectively, and on a sustained basis."). The ALJ ignored Dr. Fetterman's opinion when he concluded that Plaintiff had only mild limitations in each of the functional areas of mental functioning. When an ALJ "disregard[s] [] opinions and mak[es] contrary findings, he effectively reject[s] them. His failure to offer reasons for doing so [i]s legal error." *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

### B. Dr. Riley's Opinion

The ALJ's handling of the opinion of Dr. Riley, the other examining psychologist, fares no better. The ALJ outright rejected Dr. Riley's opinion which included a finding that Plaintiff did "not appear to be able to work at this time." (AR 966.) The ALJ stated that Dr. Riley's opinion was unpersuasive because "[a]lthough []his opinion is supported with an evaluation of the claimant, it is equivocal and is inconsistent with the State agency consultants' findings and the evidence discussed in the paragraph concerning those findings." (AR 19.) The ALJ also noted that "there is no indication that Dr. Riley shares the consultants' superior understanding of the rules and regulations governing Social Security disability adjudications." (*Id.*)

As an initial matter, the ALJ's discussion of the supportability and consistency of Dr. Riley's opinion is insufficient. *See Woods*, 32 F.4th at 792 ("an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). The ALJ did not identify which evidence is inconsistent with Dr. Riley's finding in the opinion paragraph discussing Dr. Riley's opinion. Nor did the ALJ discuss the allegedly inconsistent evidence in the paragraph regarding the psychological consultants' findings; instead, that paragraph refers to the consultants' "references to specific evidence in the record," but there is *no*

citation to *where* in the record these references exist or discussion of what the "specific evidence" is. (AR 19.)

In addition, the ALJ failed to note that Dr. Riley's opinion was from a year later than the consultants' findings and thus might reflect a worsening in Plaintiff's condition. (AR 962.) While the ALJ is entitled to rely upon the state agency consultants' superior understanding of the rules and regulations governing Social Security disability adjudications under the revised regulations, *see* 20 C.F.R. § 404.1520c(c)(5), he still must "explain how [he] considered the supportability and consistency factors" in reaching his findings, *see Woods*, 32 F.4th at 792. Because the ALJ's analysis of these factors with respect to Dr. Riley's opinion is incomplete, it is not supported by substantial evidence.

### C. Treating Psychotherapist Dr. Carol Fabric's Opinion

Plaintiff's treating psychotherapist Dr. Carol Fabric offered an opinion which detailed Plaintiff's history of depression and anxiety and concluded that Plaintiff was "totally disabled for her own work." (AR 811-814.) The ALJ did not discuss Dr. Fabric's report at all. The Commissioner argues that he was not required to do so because Dr. Fabric's opinion did not include any functional limitations, was not supported by notations to the record or her own examination findings, and offered an opinion on the ultimate disability question which is reserved for the Commissioner. (Dkt. No. 27 at 13.) The Court cannot consider the Commissioner's post-hoc explanation for the ALJ's failure to discuss Dr. Fabric's opinion. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). An ALJ errs by rejecting a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014); *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he ignores it). By ignoring Dr. Fabric's opinion, the ALJ failed to address medical opinion evidence regarding the severity of Plaintiff's mental impairments.

\*\*\*

Accordingly, the ALJ's consideration of the medical evidence regarding the severity of Plaintiff's mental impairments is not supported by substantial evidence.

## II.     Subjective Symptom Testimony

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (cleaned up). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (cleaned up).

Applying the two-step analysis, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 21.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036.  Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 21.)

The ALJ's boilerplate conclusory rationale fails to satisfy the requirement that an ALJ provide "specific, clear, and convincing reasons" supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony. *Trevizo*, 871 F.3d at 678 (finding that the ALJ erred in using "boilerplate language" for the adverse credibility finding rather than offering "specific, clear, and convincing reasons."); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding the ALJ erred in failing to "specifically identify any such inconsistencies" and instead stating "her non-credibility conclusion and then summariz[ing] the medical evidence supporting her RFC

determination."). To ensure meaningful review, the ALJ must provide "specific reasons" "so that we may ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter*, 806 F.3d at 494. That is, the ALJ must "link that testimony to the particular parts of the record supporting her non-credibility determination." *Id*. The ALJ's failure to do so here is grounds for remand.

Elsewhere in the opinion, the ALJ repeatedly referred to Plaintiff's "lack of earnest attempts to significantly alter her homeopathic treatment regimen, improvement and demonstrations of normal and nearly normal functioning despite a lack of prescribed pharmaceutical medication, engaging in strenuous activity since the alleged onset date, and not rejecting the idea of reapplying to the strenuous job she performed on a part-time basis prior to the COVID-19 shutdown."  (AR 23, 24.)  To the extent that these form the basis for the ALJ's rejection of Plaintiff's subjective pain testimony, they are not clear and convincing reasons supported by substantial evidence.

First, the ALJ did not explain how Plaintiff's use of homeopathic treatment undermines her subjective pain testimony.  To the extent that the ALJ inferred that homeopathic treatment is essentially conservative treatment, this is neither apparent from his opinion nor is it supported by the record as in addition to the homeopathic treatment, there is ample evidence that Plaintiff pursued physical therapy, acupuncture, lumbar nerve root block, and shoulder injections.  (AR 409-410, 417.)  Even if such treatment could be deemed "conservative," conservative medical treatment can only be used as a basis for discounting a claimant's testimony where the ALJ identifies the more aggressive treatment options that were available and appropriate and considers the reasons the claimant did not pursue more aggressive treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[A]n adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.") (internal citations and quotation marks omitted); *Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("[A]n ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment options are appropriate or available." (internal citations and quotation marks omitted)).  Thus, the ALJ errors when he draws an adverse inference from Plaintiff's treatment plan

9

without giving her the opportunity to explain why she did not elect a more aggressive treatment plan. *See* SSR 16-3p (stating that an ALJ must consider "possible reasons" for conservative treatment and that an ALJ may need to contact the claimant or raise the issue at the hearing); *Eitner v. Saul*, 835 F. App'x 932, 933 (9th Cir. 2021) (citing SSR 16-3pm and stating that failure to pursue more aggressive treatment was not a clearing and convincing reason to reject plaintiff's testimony because the "ALJ failed to consider possible reasons why claimant did not seek or obtain treatment" and the ALJ only asked plaintiff whether he had received treatment, but "the inquiry ended there"). Because the ALJ did not consider Plaintiff's reasons for relying on homeopathic treatment, the ALJ did not provide a clear and convincing reason supported by substantial evidence for rejecting her subjective pain testimony.

Second, the ALJ offered no evidentiary support for his statement that Plaintiff has "normal functioning despite a lack of prescribed pharmaceutical medication." (AR 23, 24.) Earlier in his opinion, the ALJ cites to three treatment records from August 2018, November 2018, and July 2019 which suggest that Plaintiff is making steady progress. (AR 22.) However, there is also evidence which suggests that Plaintiff "continues to struggle significantly with pain in multiple respects" as of September 2019. (AR 840.) ALJ erred in cherry-picking evidence that supported his conclusion while ignoring medical evidence that contradicted his conclusion. *See Cotton v. Astrue*, 374 Fed. App'x. 769, 773 (9th Cir. 2010) (holding that an ALJ's "cherry-picking of [claimant's] histrionic personality out of her host of other disorders is not a convincing basis for the adverse credibility finding"); *see also Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.").

Finally, to the extent that the ALJ relied upon Plaintiff having "engaged in multiple strenuous activities" as undermining her symptom testimony, the record does not support this statement. In support of this statement the ALJ referenced the fact that in August of 2018 Plaintiff lifted about 30 boxes out of a storage area. (AR 22.) This incident is memorialized in treatment notes from a physical therapy session wherein Plaintiff complained that as a result of this activity she "developed soreness at her mid-back region." (AR 597.) The ALJ also cited that in October of 2018 Plaintiff reported taking "long driving trips over the weekend"; however, as the ALJ also noted, as a result of these driving trips

Plaintiff "developed increased low back and thoracic pain." (AR 22.)   Neither incident supports the ALJ's conclusion that Plaintiff's ability to do strenuous things undermined her reports of pain as Plaintiff contemporaneously stated that the activities caused her increased pain. Similarly, to the extent that the ALJ relied upon Plaintiff not having ruled out returning to her part-time work at a wildlife park, Plaintiff's actual hearing testimony when asked if she would return to the position post-COVID, was: "it was extremely hard…the jury is still out on whether I would or would not go back because it did increase my pain."   (AR 22, 53.)

In sum, the ALJ's rejection of Plaintiff's subjective symptom testimony does not satisfy the "demanding" "clear and convincing standard." *Garrison*, 759 F.3d at 1013.

### III.   Other Medical Opinion Evidence

Plaintiff insists that the ALJ erred in rejecting the opinions of several of her treating medical providers as inconsistent with the findings of Dr. Pham, the state agency medical examiner.  Plaintiff's arguments of error are similar to those she raised with respect to the adequacy of the ALJ's supportability and consistency findings for the medical opinion testimony regarding her mental impairments. (Dkt. No. 20 at 33-36.)  The Court finds it unnecessary to reach Plaintiff's argument because even assuming the ALJ's findings were not supported by substantial evidence under *Woods v. Kijakazi*, 32 F.4th 785, 789-792 (9th Cir. 2022), Plaintiff has not identified any harmful error in the ALJ's analysis.  In particular, as the Commissioner notes, the ALJ included the need to "change positions between sitting and standing at will" in his RFC.  (AR 20.)  Plaintiff has not identified any other limitation that the ALJ erred in failing to include; thus, "the ALJ's error, if any indeed existed, was inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### IV.   Harmless Error

Because the ALJ's consideration of the medical evidence regarding the severity of Plaintiff's mental impairments and her subjective symptom testimony are not supported by substantial evidence, the ALJ's decision cannot stand. The ALJ's errors here go to the heart of the disability determination and are not harmless. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the

11

testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Had the ALJ not erred in evaluating the medical opinion evidence and rejecting Plaintiff's subjective symptom testimony, the ALJ could have reasonably come to a different conclusion regarding the severity of Plaintiff's mental impairments and her ability to work. *Id*. at 1056 (error was not harmless where crediting lay testimony supported a conclusion that the plaintiff's mental impairments would preclude him from returning to gainful employment).

## IV.   Remand

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When reversing an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). Remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citation omitted).

Here, the first prong of the test is not satisfied because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made given the Court's conclusion that the ALJ erred with respect to his consideration of the medical evidence regarding the severity of Plaintiff's mental impairments, and in rejecting Plaintiff's subjective symptom testimony. The second prong of the test has been satisfied, as discussed above, because the ALJ gave legally insufficient reasons for discounting Dr. Fetterman, Dr. Riley, and Dr. Fabric's opinions, and Plaintiff's subjective symptom testimony.  The third prong, however, is not satisfied.  It is not clear from the record that the ALJ would be required to find Plaintiff disabled were the evidence properly credited. Further proceedings are therefore warranted.

//

**CONCLUSION**

The Court GRANTS Plaintiff's motion, DENIES Defendant's motion, and REMANDS for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: September 28, 2022

_____
JACQUELINE SCOTT CORLEY
United States District Judge